**Archie JULIEN, Appellant,**

v.

**Agnes S. BAKER, Appellee.**

**No. C14–87–630–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 15, 1988.

M. Charles Gandy, Houston, for appellant.

Michael W. Middleton, D. Michael Holt, Bryan, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a judgment in favor Appellee awarding her title to a .022 acre triangular shaped tract of land by virtue of adverse possession. We affirm.

On June 30, 1958, Appellee and her spouse purchased a home in the city of College Station, Texas. The legal description of the property purchased is Lot Thirteen, Block Two, College Hills Estates, First Installment. At the time they purchased the property Appellee had the land surveyed in order to locate the boundaries

of the property. This survey was performed by Mr. J.S. Harrison, a registered public surveyor, and will be referred to as the "Harrison Survey." Mr. Harrison installed iron marker pins at the corners of the lot and Appellee used these markers as reference points for the boundaries of the lot when she landscaped her property. She planted a hedge and several trees on the boundary line between her lot and adjoining vacant Lot No. 14. Appellant and her family have continuously maintained, cultivated and used the land within these survey markers since 1958.

In December, 1984, Appellant began negotiations with a third party concerning the purchase of Lot 14, and a portion of Lot 15. Appellant purchased this property in August 1985. Prior to his purchase of this property, Appellant hired Mr. Donald D. Garrett, a registered public surveyor, to perform a survey. This survey will be referred to as the "Garrett Survey." This survey revealed a discrepancy in the common boundary line between Lot 14 and Appellee's property, Lot 13. Therefore, Appellant knew of the adverse claim prior to his purchase of Lot 14. Appellant brought the discrepancy to Appellee's attention and the ensuing dispute resulted in the present lawsuit when Appellant threatened to erect a privacy fence enclosing the disputed strip of land.

The parties stipulated at trial that Appellee is the owner of Lot 13 and Appellant is the owner of Lot 14 "subject to whatever rights of limitation or adverse possession that Mrs. Baker is able to establish in that the common boundary line between those two lots is the boundary line as determined by Bill Kling and Don Garrett, two separate surveys that have heretofore been made." The case was submitted to the court for determination and the court rendered judgment for Appellee and awarded her title in the disputed land. Appellant failed to make a timely request for findings of fact and conclusions of law and none were issued by the trial court.

Appellant asserts five points of error on appeal. In his first two points of error, Appellant alternatively contends there was no evidence or insufficient evidence that Appellee possessed the intent necessary to ripen limitation title to the disputed strip. In his third point of error, Appellant asserts that Appellee judicially admitted that she did not possess the intent necessary to ripen a limitation title.

In a non-jury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). These implied findings may be challenged on appeal by "insufficient evidence" or "no evidence" points the same as a jury's findings and a trial court's findings of fact. *Burnett v. Motyka,* 610 S.W.2d at 736. In resolving no evidence points of error, we consider only that evidence favorable to the judgment and disregard all that which is opposed to it. *International Bank, N.A. v. Morales,* 736 S.W.2d 622, 624 (Tex.1987). However, in reviewing insufficient evidence points, we must consider and weigh all the evidence, including any evidence contrary to the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d at 736; In *re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952).

TEX.CIV.PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986) states in pertinent part:

> (a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses or enjoys the property.

Adverse possession is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person. TEX.CIV.PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 1986). No matter how exclusive and hostile to the true owner the possession of the land may be, the possessor must *intend* to appropriate it." *Calfee v. Duke,* 544 S.W.2d 640, 642 (Tex.1976).

Appellant asserts that Appellee's testimony that she believed the disputed tract

was in the deed to Lot 13 and never intended to take anyone else's land constitutes a judicial admission that she did not possess the requisite intent. We disagree.

Often the statements of the adverse claimant are, or appear to be, inconsistent. In such instances it is generally held that a fact issue exists on the issue of his intent to claim the land. *Calfee v. Duke,* 544 S.W.2d at 642; *Pearson v. Doherty,* 143 Tex. 64, 183 S.W.2d 453, 456 (1944); *Stewart v. Luhning,* 134 Tex. 23, 131 S.W.2d 824 (1939); *Payne v. Priddy,* 371 S.W.2d 783, 784 (Tex.Civ.App.—Fort Worth 1963, no writ). The trial court has found all fact issues in favor of Appellee; therefore, it is irrelevant whether her testimony was inconsistent. *Calfee v. Duke,* 544 S.W.2d at 642. Appellee testified she believed the boundary line to her lot was delineated by the surveyor's iron pin markers, and that when she and her husband planted the trees and privet hedge, they located the iron pin markers and ran a string between them, "So we wouldn't plant our shrubbery and trees on the other property." She stated that the purpose of planting the hedge was, "[T]o let our children know that they were not to play on other people's properties, and that was a line—we couldn't afford a fence so we put up the shrubbery." She also stated that the water meter installed by the utility company to monitor the water usage for her property was located on the disputed strip of land. On cross-examination, she testified as follows:

Q: You strung that line where you did because you had no intent to claim any property other than what was described in your Deed; is that not correct?

A: That was surveyed that way and that's what we were told that's where the property line was. It's our original survey.

. . . . .

Q: Did you ever state to anyone that that property that you were mowing and where your hedges were located, that you were claiming that as your own no matter what?

A: Well, they were mine.

She further testified on rebuttal that it had been her intent all along to use that property and appropriate it for her own use.

It is clear from the record that Appellee did not consider that she was claiming the property adversely to anyone for the simple reason that for 28 years she thought she was the rightful owner of the land.

Further, Appellee manifested this claim of right by open and visible possession and use of the property. The evidence shows that immediately after moving into the house on Lot 13, Appellee and her family began landscaping the yard and planted a privet hedge and trees on the boundary line between Lot 13 and Lot 14 as delineated in the Harrison Survey. They also planted St. Augustine grass up to the boundary line and planted additional shrubbery and flowers on the disputed strip. Since 1958, Appellee has continuously and uninterruptedly cultivated, maintained and used the disputed property to the exclusion of all others. They have mowed the grass, trimmed the hedges, and pruned the trees and shrubs on the disputed tract.

Mr. and Mrs. Black, previous owners of Lots 14 and 15, lived in a house on Lot 15 for many years. Lot 14 has remained vacant and is entirely overgrown with weeds so that the boundary between the property claimed by Appellee and the vacant lot is clearly visible. Appellee testified that at no time did the Blacks question her ownership of the disputed strip of land.

Mr. Adams, who purchased Lots 14 and 15 from Mr. and Mrs. Black's heir, testified that he had not thought about the boundary line but "would have assumed" that the property line between Lots 13 and 14 was at the edge of the area that was mowed and that the hedges and trees would go with Appellee's house.

Ms. Price lives across the street from Appellee. She testified that she often saw Appellee and her family working in their yard. She stated that she "assumed it was their yard where they had mowed to" and that if she had known that the property line was actually six and one-half feet inside the point to which they mowed, she

would have been "put on notice that they were out there cultivating and using some property that didn't belong to them."

Further, Appellant testified that after Mr. Garrett informed him of the discrepancy in the boundary line, he looked at the property and, "It was obvious that they [the Bakers] occupied the land" that lay within that disputed strip.

█ It has been held that maintaining a *pre-existing* hedge and mowing grass located on a disputed parcel of land and keeping the land in the condition in which the claimant's grantor kept it do not constitute a hostile character of possession sufficient to give notice of an exclusive adverse possession. *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985); *Miller v. Fitzpatrick,* 418 S.W.2d 884, 890 (Tex.Civ.App. —Corpus Christi 1967, writ ref'd n.r.e.); *Surkey v. Qua,* 173 S.W.2d 230, 232 (Tex. Civ.App.—San Antonio 1943, writ dism'd w.o.m.). However, no previous case has addressed the issue of whether *planting* a hedge is a sufficiently hostile action. We hold that planting a hedge on the asserted property line of the tract to create a barrier or "fence" between the properties is a sufficiently permanent, visible and unequivocal act to evidence a hostile character of possession which is sufficient to give notice to the true owner of the claimant's adverse possession.

Therefore, we find Appellee's claim of right, coupled with her actual and visible possession and use of the property, sufficient to satisfy the statutory requirements. Appellee's claim of right cannot be defeated by her lack of knowledge of the error in the survey or by her failure to realize that there could be other claimants for that strip of land. *Calfee v. Duke,* 544 S.W.2d at 642; *Ybarra v. Newton,* 714 S.W.2d 353, 355 (Tex.App.—Corpus Christi 1986, no writ). Points of error one, two and three are overruled.

In his fourth and fifth points of error, Appellant alternatively asserts that there is no evidence and pleadings, or insufficient evidence and pleadings, to identify or locate the exact dimensions of the tract of land awarded to Appellee by the trial court.

We find these contentions entirely without merit. The trial court's judgment states in pertinent part:

IT IS ORDERED that Plaintiff have title to and possession of the real property described in Exhibit "A" attached hereto and incorporated by reference the same as if fully set forth at length (signed for identification), said property being located in Brazos County, Texas.

Exhibit "A" referred to in the judgment consists of the field notes for a survey of the disputed strip of land conducted under the supervision of Mr. Garrett on June 16, 1987. These field notes recite the lot and block numbers of the property and describe the strip of land by metes and bounds using the concrete monuments noted in the Garrett Survey and the iron pins placed in the ground during the Harrison Survey as reference points.

█ The party claiming title by virtue of adverse possession has the burden of alleging or proving a description of the property claimed by it. *Coleman v. Waddell,* 151 Tex. 337, 249 S.W.2d 912, 913 (1952). The claimant must identify the land to establish its location and to show the extent of its interest in the land claimed. *Jones v. Mid–State Homes, Inc.,* 163 Tex. 229, 356 S.W.2d 923, 925 (1962). However, the general test for determining the sufficiency of a description of the land is whether the tract can be identified with reasonable certainty. *Zobel v. Slim,* 576 S.W.2d 362, 369 (Tex.1978).

█ We find that there is sufficient evidence in the record by which the disputed strip of land may be identified with reasonable certainty. The parties stipulated at trial that the correct boundary line between Lots 13 and 14 was that delineated by the concrete monuments reflected in the Kling and Garrett Surveys. Appellee's First Amended Petition alleged that, "It is the Harrison Survey upon which Plaintiff relies for establishment of the boundary lines of the property purchase." Appellee testified that iron pins were placed in the ground to mark the corners of Lot 13 when the Harrison Survey was performed. She further testified that the concrete monuments were

established on the property when the Kling Survey was conducted in 1966. She agreed that the disputed strip was the triangle "formed by the line from the Harrison point to the back, and then back down to the Kling point." Plaintiff's Exhibit 5 depicts this triangular strip of land and clearly notes its boundaries as those delineated by the Harrison Survey and the Kling–Garrett Survey. Both the Harrison Survey and the Garrett Survey were admitted into evidence at trial. We hold that this evidence provides a description of the disputed tract which is sufficient to identify it with reasonable certainty so that it may be located upon the ground. Points of error four and five are overruled.

Accordingly, the judgment of the trial court is affirmed.