COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-033-CV

  
MIKE PERKINS AND TAWN PERKINS                                     APPELLANTS

 
V.

 
ROBERT MCGEHEE AND JANE 
MCGEHEE                                 APPELLEES

 
------------
 
FROM THE 355TH 
DISTRICT COURT OF HOOD COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        This 
is an adverse possession case. In 1995, appellees Robert and Jane McGehee 
purchased a 566-acre ranch partially located in Hood County, Texas. In 1996, 
appellants Mike and Tawn Perkins purchased an adjoining tract of real property 
in Hood County located directly south of appellee’s property. Both parties 
properly recorded deeds in Hood County that accurately describe the metes and 
bounds of the property conveyed, and there is no overlap of the legal 
description of either tract of real property. This case involves the land 
between appellees' southern legal boundary and a fence lying on the northern 
portion of appellants’ property that also divides the properties.
        In 
October 2001, appellants sued appellees seeking injunctive relief and damages 
claiming appellees erected a fence in 2000 that encroached on appellants’ real 
property and, in the process, destroyed some of appellants’ trees. Appellees 
responded by filling a general denial and asserting the ten-year limitation 
period in section 16.026 of the Texas Civil Practice and Remedies Code as their 
affirmative defense based on their adverse possession. Tex. Civ. Prac. & Rem. Code Ann. § 
16.026 (Vernon 2002). Specifically, appellees claim title to the disputed tract 
through the adverse possession of their predecessor-in-interest Steven Pedro 
(“Pedro”), who allegedly grazed cattle, maintained and improved the existing 
fence in dispute, and cleared brush and removed trees exclusive to the rights of 
all others since at least 1982.
        Following 
trial, the trial court rendered a take-nothing judgment against appellants and 
awarded appellees the disputed parcel based on their statute of limitation 
affirmative defense. The trial court also entered findings of fact and 
conclusions of law including the following: 1) the fence at issue had been in 
the same location since at least 1982; 2) the fence is not a casual fence; 3) 
appellees and their predecessors-in-interest used the disputed property for 
grazing cattle; 4) the ranch manager for the predecessor-in-interest had made 
repairs, cleared brush, and planted grass in the disputed area; 5) appellees and 
their predecessors-in-interest’s use had been adverse, hostile, and exclusive 
to anyone else for a period of at least ten years; and 6) the fence line 
established by the evidence is the legal boundary between the parties’ real 
property. On appeal from the trial court’s judgment, appellants complain in 
one issue that appellees failed to produce legally and factually sufficient 
evidence to prove they acquired the real property by adverse possession. We 
affirm.
II. Standard of Review
        A 
party seeking to establish title to land by adverse possession has the burden to 
prove every fact essential to that claim by a preponderance of the evidence. Rhodes 
v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990) (op. on reh'g). Here, because the 
appellees bore the burden of proof at trial, we will address appellants’ legal 
sufficiency complaint as a “no evidence” issue and their factual sufficiency 
complaint as an “insufficient evidence” issue. See Gooch v. Am. Sling Co., 
902 S.W.2d 181, 183-84 (Tex. App.—Fort Worth 1995, no writ) (applying “no 
evidence” standard when the party without the burden of proof challenges the 
legal sufficiency of the evidence and “insufficient evidence” standard when 
the party without the burden of proof challenges the factual sufficiency).
        In 
determining a “no-evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding and disregard all evidence and 
inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 
2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 
1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 
Anything more than a scintilla of evidence is legally sufficient to support the 
finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 
114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence 
furnishes some reasonable basis for differing conclusions by reasonable minds 
about the existence of a vital fact. Rocor Int’l, Inc. v. Nat’l Union 
Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        A 
“no-evidence” issue may only be sustained when the record discloses one of 
the following: (1) a complete absence of evidence of a vital fact; (2) the court 
is barred by rules of law or evidence from giving weight to the only evidence 
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is 
no more than a mere scintilla of evidence; or (4) the evidence establishes 
conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. 
Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No 
Evidence" and "Insufficient Evidence" Points of Error, 
38 TEX. L. REV. 
361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999).
        An 
assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to the 
contrary is so overwhelming that the answer should be set aside and a new trial 
ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are 
required to consider all of the evidence in the case in making this 
determination. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 
(Tex.), cert. denied, 525 U.S. 1017 (1998).
III. Adverse Possession
        Under 
the ten-year limitation statute, the elements of adverse possession are an: (1) 
actual appropriation of land; (2) cultivation, use, or enjoyment of such land; 
(3) adverse or hostile claim; and (4) exclusive domination over the property and 
appropriation of it for the possessor’s own use and benefit for a period of at 
least ten years.[1]  Tex. Civ. Prac. & Rem. Code Ann. 
§§ 16.021(1), & 16.026(a); Rhodes, 802 S.W.2d at 645. In other 
words, the title holders must bring suit to clear their title within ten years 
of the accrual of the cause of action to defeat the possessor’s claim. 
Additionally, the party claiming title by virtue of adverse possession has the 
burden of proving a description of the property adversely possessed. Coleman 
v. Waddell, 151 Tex. 337, 249 S.W.2d 912, 913 (1952); Julien v. Baker, 
758 S.W.2d 873, 877 (Tex. App.—Houston [14th Dist.] 1998, writ 
denied), cert. denied, 493 U.S. 955 (1989). In this case, appellants 
specifically complain that the evidence offered by appellees at trial was 
insufficient to prove a description of the property or actual appropriation and 
exclusive use.
A. Description of the Property
        The 
claimant must identify the land to establish its location and to show the extent 
of its interest in the land claimed. Julien, 758 S.W.2d at 877. In other 
words, the adverse claimant must merely prove the location of the disputed 
property on the ground. Thompson v. Tex. Commerce Bank Ass'n, 586 S.W.2d 
138, 139 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref’d 
n.r.e.). The general test for determining the sufficiency of a description of 
the land is whether the tract can be identified with reasonable certainty. Julien, 
758 S.W.2d at 877.
        At 
trial, both appellants and appellees introduced copies of their deeds, which 
contain metes and bounds descriptions of their adjoining properties, into 
evidence. Appellants themselves offered into evidence a map depicting their 
property, which shows the fence line. An aerial photograph from the Hood County 
Appraisal District dated 1984 also admitted into evidence at trial shows the 
fence as well. The testimony at trial was that this fence has been in its 
present location since at least 1982. Moreover, while the trial court’s 
judgment fails to state any description of the property in dispute, the trial 
court's findings of fact and conclusions of law states in pertinent part:
  
The Court concludes and 
declares that the fence line established by the evidence in this case is the 
legal boundary between [appellants’] real property and [appellees’] real 
property, and appellees have legal title to and are entitled to possession of 
the area of real property north of the fence line, which was the area of real 
property in dispute in this case.
  
 
        Therefore, 
we hold that the legal description of the parties’ adjoining properties, the 
maps and aerial photo of the existing fence, and the court’s ruling, provide 
sufficient evidence to identify the disputed property with reasonable certainty 
so that it may be located upon the ground. See Julien, 758 S.W.2d 
at 877 (holding that field notes describing disputed property located between 
concrete monuments used during one survey and iron pins placed in the ground 
during another survey, along with both surveys, provided enough evidence to 
create a description of the disputed tract).
B. Actual Appropriation of the Property
        The 
element of actual appropriation requires the claimants to visibly appropriate 
the property as to give notice to any other person that they claim a right to 
the property. Parker v. McGinnes, 842 S.W.2d 357, 360 (Tex. 
App.—Houston [1st Dist.] 1992, writ denied) (op. on reh'g). 
Moreover, when a claimant relies on grazing to acquire limitation title, he must 
present evidence that he “designedly enclosed” the land at issue. McDonnald 
v. Weinacht, 465 S.W.2d 136, 141-42 (Tex. 1971) (citing Orsborn v. Deep 
Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, 785 (1954)). “If the fence 
existed before the claimant took possession of the land and the claimant fails 
to demonstrate the purpose for which it was erected, then the fence is a 'casual 
fence.' Repairing or maintaining a casual fence, even for the express purpose of 
keeping the claimant's animals within the enclosed area, generally does not 
change a casual fence into a designed enclosure.” Rhodes, 802 S.W.2d at 
646 (citations omitted). Instead, a claimant must substantially modify a casual 
fence and so change its character that the fenced-in area becomes a designed 
enclosure. Id. An exception to the enclosure requirement exists if the 
claimant can prove sufficient non-grazing use of the land such that the true 
owner would have notice of the hostile claim. Trevino v. Trevino, 64 
S.W.3d 166, 172 (Tex. App.—San Antonio 2001, no pet.)
        In 
this case, appellees relied on their and their predecessor’s (1) use of the 
property to graze cattle, (2) repair and improvement of the existing fence, and 
(3) removal of trees and brush from the property to establish adverse 
possession. At trial, Jerry McReynolds, who managed the ranch for Pedro from 
1982 until Pedro sold the ranch to appellees in 1995, testified on appellees’ 
behalf. McReynolds said that the fence was present when he began working for 
Pedro in 1982 and that he worked on the fence several times a year from 1982 
until 1995 when appellees purchased Pedro’s land. He also repaired the water 
gaps in three gullies along the fence line, as frequently as two or three times 
a year. He repaired the fence because he ran cattle in the pastures that fronted 
the fence line. He also cleared an area of trees to the north of the fence line 
and planted and fertilized coastal Bermuda grass there for grazing. In 1995, 
McReynolds represented to appellees that the fence line was the southern 
boundary of Pedro’s ranch. In regard to disputed property, appellees testified 
that since acquiring the ranch in 1995, they ran cattle on it, mowed it with a 
brush hog, sprayed it for briers and weeds, stacked and burned logs on it, and 
fertilized it once or twice.
        We 
conclude that the above provides sufficient evidence of actual and visible use 
of the property in dispute. See Butler v. Hanson, 455 S.W.2d 942, 
945 (Tex. 1970). In Bulter, the Texas Supreme Court affirmed the trial 
court’s finding of adverse possession for a defendant who based his claim of 
ownership on a fence, which enclosed an area that he used for grazing cattle, 
that had been in place for more than twenty years. Id. at 943, 945. 
Although there was no testimony at trial as to who built the fence, the court 
held that it was not a “casual fence” under Orsborn and its progeny 
because the facts in Butler adequately distinguished the two cases. Id. 
at 945-46. Specifically, the court did not require the claimants to present 
evidence that they “designedly enclosed” the land at issue, pointing to the 
following distinguishing factors: (1) in Orsborn, cattle only 
occasionally strayed on to the disputed land, whereas in Butler, there 
was testimony that the disputed land was constantly used for grazing; (2) in Orsborn 
there was an unfenced tract that belonged to the State of Texas between the land 
unquestionably owned and that claimed by adverse possession so that the adverse 
possessor had to skip the unfenced tract to claim the 57 acres, while in Butler 
the tracts were contiguous and were operated as a unit; (3) in Orsborn, 
the adverse possessor simply made use of the fence somebody else built, while in 
Butler the adverse possessor made modifications to the fence which the 
court found to be evidence that he had made it his fence; and (4) in Butler 
the undisputed evidence was that this fence was the adverse possessor's fence, 
and that the general reputation in the community was that the property bound to 
that fence was his property. Id.
        The 
facts in the instant case can also be distinguished from Orsborn by the 
same elements mentioned by the court in Butler: (1) the disputed tract 
has been constantly used for grazing; (2) the disputed tract is contiguous to 
appellees' record title land, and fenced within it, and both tracts are operated 
as a unit; (3) Pedro's ranch manager had rebuilt and replaced water-gapped 
portions of the fence, modified portions of the fence, and always maintained the 
fence on behalf of Pedro; and (4) the general reputation in the community has 
always been that the disputed property is part of appellees’ ranch and that 
the fence is the boundary between appellants’ and appellees’ land. See 
Fish v. Bannister, 759 S.W.2d 714, 718-19 (Tex. App.—San Antonio 1998, no 
pet.). Therefore, appellees and their predecessors-in-interest have provided 
sufficient evidence of a claim of right by their actions with respect to the 
disputed property.
C. Exclusive Use of the Property for Ten Years
        To 
establish title through adverse possession, the possession must unmistakably 
assert a claim of exclusive ownership in the occupant. Rick v. Grubbs, 
147 Tex. 267, 214 S.W.2d 925, 927 (1948). Appellants claim that appellees failed 
to meet their burden because appellants' son used the disputed portion of the 
property numerous times for hunting and general exploration.[2]  
Additionally, appellants claim that appellees never told appellants’ son to 
leave the property nor did appellees post trespassing signs or other means to 
exclude appellants. However, none of these factors defeat appellees’ claim of 
exclusive ownership. See id.
        Appellee, 
Robert McGehee, testified that he had two separate conversations with appellant 
Mike Perkins, specifically telling Perkins that he was not permitted to erect a 
fence north of the existing fence line. McGehee also testified that when asked 
by Perkins, he granted permission to Perkins' son, who was not the record owner 
of appellants’ land, to explore north of the existing fence line, but only so 
long as his son did not let the cows out or hurt anything. Additionally, 
McReynolds testified that Pedro has used the property to the exclusion of all 
others from 1982 to 1995 when appellees purchased the property. Therefore, 
appellees provided sufficient evidence to prove exclusive use.
IV. Conclusion
        Having 
established that appellees offered some evidence to prove a description of the 
property, actual appropriation, and exclusive use, there is more than a 
scintilla of evidence to support the trial court’s conclusion. Likewise, we 
cannot say that the trial courts’ findings were so weak or that the evidence 
to the contrary is so overwhelming that we should set aside the finding of 
adverse possession. Therefore, because we conclude the evidence is legally and 
factually sufficient to support the verdict, we overrule appellants’ sole 
issue and affirm the trial court’s judgment.

  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE

  
PANEL A: CAYCE, C.J.; 
LIVINGSTON and HOLMAN, JJ.
 
DELIVERED: March 25, 2004


NOTES
1.  To 
satisfy the ten-year requirement in the fourth element, section 16.023 of the 
Texas Civil Practice and Remedies Code permits taking of successive interests 
upon a showing of privity of estate between each holder and his successor. McAnally 
v. Tex. Co., 124 Tex. 196, 76 S.W.2d 997, 1001 (1934).
2.  Mike 
Perkins testified that he also used the disputed property for hunting and 
general exploration; however, the record does not support this assertion.