In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00243-CR
______________________________


JEROME DEWEN WILLIAMS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31829-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION
          After the trial court denied his motion to suppress evidence, Jerome Dewen Williams
pled guilty to possessing cocaine in an amount greater than four grams but less than 200
grams. See Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2005)
(cocaine classified as penalty group 1 narcotic); Tex. Health & Safety Code Ann.
§ 481.115(a) (Vernon 2003) (criminalizing possession of penalty group 1 narcotic). There
was no plea agreement in the case, and Williams faced the punishment range for a
second-degree felony. See Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003);
Tex. Pen. Code Ann. § 12.33 (Vernon 2003). The trial court accepted Williams' plea and
sentenced him to ten years' imprisonment. Williams timely appealed to this Court.           On appeal, Williams contests neither the initial traffic stop nor the officer's Terry



search of Williams for weapons; instead, Williams challenges the officer's subsequent
invasive search of Williams' pants pocket as a violation of Williams' Fourth Amendment
protection against illegal searches and seizures. We overrule Williams' sole point of error
and affirm the trial court's judgment.
1. The Standard of Review
          "[W]hen reviewing a trial court's decision to deny a motion to suppress, an appellate
court 'should afford almost total deference to a trial court's determination of the historical
facts that the record supports especially when the trial court's fact-findings are based on
an evaluation of credibility and demeanor.'" Montanez v. State, No. PD-894-04, 2006 Tex.
Crim. App. LEXIS 8301, at *5 (Tex. Crim. App. Apr. 26, 2006) (quoting Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "An appellate court 'should afford the same
amount of deference to trial court's rulings on 'application of law to fact questions,' also
known as 'mixed questions of law and fact,' if the resolution of those ultimate questions
turns on an evaluation of credibility and demeanor.'" Montanez, 2006 Tex. Crim. App.
LEXIS 8301, at *5–6 (quoting Guzman, 955 S.W.2d at 89). 
          In this case, the suppression hearing comprised a total of twenty-one pages of
testimony and argument of counsel. Only one witness, Officer Larry Webb of the Longview
Police Department, testified for either side. Williams did not testify. Thus, the trial court's
implied fact-findings


 and application of the law to facts necessarily turned on that court's
evaluation of Webb's credibility and demeanor. Accordingly, we are to afford almost total
deference to the trial court's decision to uphold the search because it is an issue that
presents a mixed question of law and fact.
 
 
2. The Evidence and Arguments Adduced in the Court Below
          Webb testified he was patrolling the area of Morgan and Martin Luther King Streets
in Longview on the evening of January 28, 2004. According to Webb, this area is a known
narcotics trafficking area. Webb observed a blue vehicle "squeal his tires" and drive away
from the area quickly.


 Webb then saw the driver turn the vehicle onto another street
without signaling, a violation of state law. See Tex. Transp. Code Ann. § 545.104 (Vernon
1999). Webb stopped the vehicle and made contact with its driver. When the driver
lowered his window, Webb smelled the odor of marihuana. Webb's backup officer,
Anthony Boone, soon arrived, after which Webb had the driver exit the vehicle, patted him
down, and identified him as Jerome Williams. When Williams exited the vehicle, Webb
observed what he believed to be "marihuana residue" on the door jam of the vehicle. 
During the pat-down, Webb felt a large bag in Williams' front pocket. Because Webb had
earlier smelled an odor of marihuana coming from the vehicle, and because Webb had
seen marihuana residue on the driver's side door, Webb believed the bag that he felt in
Williams' pocket during the Terry pat-down contained marihuana or other narcotics. Webb
thus reached inside Williams' pocket, pulled out the bag, and found it contained marihuana. 
Webb then arrested Williams for possession of that marihuana. See Tex. Health &
Safety Code Ann. § 481.121 (Vernon 2003). A subsequent search of the vehicle incident
to the driver's arrest uncovered "a large plastic bag that contained ten smaller bags of
crack cocaine underneath the driver seat."


 
3. Analysis of the Issue Presented
          As Williams challenges neither the initial traffic stop nor the Terry pat-down, our
analysis concerns only whether the trial court properly concluded that the more invasive
search of Williams' pocket was justified given the facts of this case.
          A warrantless arrest is generally considered unreasonable under the Fourth
Amendment to the United States Constitution unless the arrest fits into one of the "few
specifically defined and well delineated exceptions" to the warrant requirement. Minnesota
v. Dickerson, 508 U.S. 366, 372 (1993). If, however, an officer is justified in believing that
an individual "'whose suspicious behavior he is investigating at close range is armed and
presently dangerous to the officer or others,' the officer may conduct a patdown search 'to
determine whether the person is in fact carrying a weapon.'" Id. at 373 (quoting Terry, 392
U.S. at 24). The purpose of this pat-down search is limited: it is not a fishing expedition
for evidence of criminal conduct, but the officer's search should instead be limited strictly
to "that which is necessary for the discovery of weapons which might be used to harm the
officer or others nearby." Id. (quoting Terry, 392 U.S. at 26). Terry weapons searchers are
to be limited to a pat-down of the suspect's exterior clothing; Terry does not itself authorize
more invasive searches such as putting fingers or hands inside pockets. See Terry, 392
U.S. at 24–26 ("limited search of the outer clothing," "limited to that which is necessary for
the discovery of weapons"). However, if during the Terry search the officer discovers what
he or she—based on the officer's training, education, and/or experience—believes is
"nonthreatening contraband" such as illegal narcotics, then the officer may conduct a more
invasive search and seize any discovered contraband without a warrant. Dickerson, 508
U.S. at 373–75. However, before that more invasive search occurs, our law requires that
the criminality of such suspected contraband be immediately apparent to the officer. 
Carmouche v. State, 10 S.W.3d 323, 330–31 (Tex. Crim. App. 2000). Searches of an
automobile's passenger compartment, when incident to an occupant's lawful custodial
arrest, do not violate the Fourth Amendment. New York v. Belton, 453 U.S. 454, 460
(1981); State v. Grey, 158 S.W.3d 465, 470 (Tex. Crim. App. 2005). 
          Webb testified that the initial traffic stop occurred in an area known for drug
trafficking. Webb smelled the odor of marihuana coming from the car, and he saw what
he believed to be marihuana residue on the driver's side door. Webb agreed that he
patted Williams down "for officer safety." During the pat-down, Webb felt an object in
Williams' front pocket that Webb described as being larger than a sandwich bag. Webb
further testified that, "[W]hen I felt the bag, I believed what it was was contraband . . . ." 
In other words, based on all the information available to Webb (as well as based on his
training and experience), the potential criminality of the object he felt was readily apparent. 
Cf. Dickerson, 508 U.S. at 375–76 ("If a police officer lawfully pats down a suspect's outer
clothing and feels an object whose contour or mass makes its identity immediately
apparent, there has been no invasion of the suspect's privacy beyond that already
authorized by the officer's search for weapons; if the object is contraband, its warrantless
seizure would be justified by the same practical considerations that inhere in the plain-view
context."). 
          Giving almost total deference to the trial court's application of law to facts, when, as
was the case here, such a decision turns on the trial court's evaluation of Webb's credibility
and demeanor, we cannot say the evidence does not support the trial court's judgment. 
The traffic stop occurred in an area known for narcotics trafficking. Webb had smelled an
odor of marihuana coming from the vehicle. Webb had seen marihuana residue on the
driver's side door. During the Terry pat-down, Webb felt an object in Williams' pocket that
Webb immediately identified as potential marihuana or other narcotics. Webb's more
invasive search of Williams' pocket was, therefore, not unreasonable under the Fourth
Amendment. Accordingly, it follows that both Williams' arrest for possessing the
marihuana found in his pants, and the subsequent search of his car as incident to that
custodial arrest, were lawful under our Fourth Amendment jurisprudence. See Belton, 453
U.S. at 460; Grey, 158 S.W.3d at 470. No error has been shown.
          For the reasons stated, we affirm the trial court's judgment.
 

                                                                Donald R. Ross
                                                                Justice


Date submitted:       May 24, 2006
Date decided:          May 25, 2006

Do Not Publish




0;   The evidence is not conclusive. The cross-examination of the surveyor cast doubt
on the survey based on the weaknesses of prior surveys and the changes in the nature of
the land over a period of decades as a result of the creation of Cherokee Lake. Thus, 
there is some question concerning the actual location of the properties involved—not on
the ground—but as shown by the survey. Where the evidence conflicts, we cannot
conclude the trial court erred by refusing to render a JNOV in favor of Cherokee. The trial
court also did not err by overruling Cherokee's objection to the adverse possession jury
instruction based on this contention.
          The prior lawsuit orders legal title vested in Cherokee to all the land conveyed
pursuant to the 1948 deed from W. F. and Dessie Freeman, including but not limited to
Lots SR-51, SR-52, and SR-53. The prior judgment does not specifically determine that
Park A Lot is included in the 48-1/2 acres conveyed to Cherokee by the Freemans. 
Therefore, that issue was not actually litigated in the prior case. 
          C. Does the Prior Litigation Arise from the Same Subject Matter as this Case
          Res judicata precludes relitigation of claims that have been finally adjudicated or
that arise out of the same subject matter and that could have been litigated in the prior
action. Amstadt, 919 S.W.2d at 652 (citing Barr, 837 S.W.2d at 628).
          As recognized by this Court, where there is a legal relationship (such as under a
lease, a contract, or a marriage), all claims arising from that relationship will arise from the
same subject matter and be subject to res judicata. Musgrave v. Owen, 67 S.W.3d 513,
520 (Tex. App.—Texarkana 2002, no pet.) (citing Weiman v. Addicks-Fairbanks Road
Sand Co., 846 S.W.2d 414, 419 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (core
facts common to all claims regarding continued operation of landfill after lease expired;
combining claims would be consistent with achieving comprehensive conclusion to
business relationship); see also Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993)
(resolving both tort and divorce actions in same proceeding avoids two trials based at least
in part on same facts; settles in one suit "all matters existing between the parties"); 
Robinson v. Garcia, 5 S.W.3d 348, 350–51 (Tex. App.—Corpus Christi 1999, pet. denied)
(both claims should have been tried together as they arose from representation in same
case, although distinct injuries and improper conduct were alleged); but see In re J.G.W.,
54 S.W.3d 826, 833 (Tex. App.—Texarkana 2001, no pet.) (tort claims for personal injury
that could have been brought in divorce-custody suit, but were not essentially connected
to that action and would only be incidental to the main objective of the court, to determine
the best interests of children, not barred by res judicata)).
          The decisive issue is whether this litigation involves the same subject matter as the
litigation between these parties that resulted in the previous judgment. If it was, this action
is barred; otherwise, it is not. "A determination of what constitutes the subject matter of a
suit necessarily requires an examination of the factual basis of the claim or claims in the
prior litigation." Barr, 837 S.W.2d at 630. 
          The record of the argument of counsel presented to the trial court on the motion for
summary judgment in cause number 96-138 is before us in this matter. After carefully
reviewing it, we find the prior litigation concerned Lots SR-51, SR-52, and SR-53 and did
not address Park A Lot, which is the dispute in this case. Specifically, counsel for
Cherokee stated the following at the motion for summary judgment hearing in the prior
case: 
Cherokee Water Company and the Nelsons would assert that they are
entitled to judgment as a matter of law on their trespass to try title claims for
SR-51 and SR-52. Cherokee Water Company would assert that it is entitled
to judgment as a matter of law on its trespass to try title claim for SR-53. 
The Nelsons and Cherokee Water would also -- well, Cherokee Water would
assert that it is entitled to a declaratory judgment, that it has legal title to
SR-51, SR-52 and SR-53. The Nelsons would assert or would request a
declaratory judgment that they are entitled to peaceful and exclusive
possession of SR-51 and SR-52. 
          The attorneys referred to either SR-51, SR-52, or SR-53 on at least nine additional
occasions during the motion hearing and never indicated that Park A Lot was a part of the
dispute. 
          While Park A Lot is an adjoining tract to SR-53, Park A Lot is designated on the plat
as a separate parcel of real estate. It is clear that the rights of the parties to Park A Lot
were not adjudicated in the prior action. However, that does not end our inquiry. We must
determine if the subject matter of the prior action was the same as that in this case. Both
cases do involve the alleged adverse possession by Freeman of lots that Cherokee claims
to own. It is also true that the judgment in the prior case confirmed Cherokee's ownership
of the 48-1/2 acres conveyed by W. R. and Dessie Freeman in 1948. However, there was
no jury finding in this case that the 48-1/2 acres included Park A Lot, and we have held that
the evidence does not establish as a matter of law that Park A Lot is a part of the 48-1/2
acres. Consequently, the fact that the prior judgment confirms Cherokee's ownership of the
48-1/2 acres does not adjudicate the ownership of Park A Lot. 
          Real estate is considered to be unique. Home Sav. of Am., F.A. v. Van Cleave Dev.
Co., 737 S.W.2d 58, 59 (Tex. App.—San Antonio 1987, no writ). The fact that a party
makes a claim of adverse possession to one lot does not require the party to assert an
adverse possession claim to the adjoining lot or be forever barred. Essentially, Cherokee
is arguing that, even though the previous suit sought to establish its ownership of Lots
SR-51, SR-52, and SR-53, Freeman was required to pursue his adverse possession claim
concerning Park A Lot, a separate lot. We disagree. 
          We find that Park A Lot is a separate and distinct parcel of real estate from Lots
SR-51, SR-52, and SR-53 and as such it does not involve the same subject matter as the
previous litigation. Therefore, res judicata does not preclude Freeman from asserting his
adverse possession claim to Park A Lot. 
          D. Is Freeman Estopped from Presenting this Claim
          In a connected argument, Cherokee also contends Freeman is estopped as a
matter of law from claiming the property by adverse possession because the deed covers
the property, and since his predecessor was the grantor of the property under the deed,
he is estopped by the deed to raise this claim in the absence of an affirmative repudiation
of the title. See McLaren v. Beard, 811 S.W.2d 564, 568 (Tex. 1991). The difficulty in
Cherokee's position lies in the same matter discussed above: the lack of any conclusive
evidence or jury finding that the property is contained within the bounds of the land
described by the 1948 deed. In the absence of those factors, a vital underpinning for the
concept is missing and the estoppel argument fails.



II. Sufficiency of the Evidence
          Cherokee questions whether the evidence is legally and factually sufficient to
support the verdict.
          In determining a no-evidence issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the
contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of evidence is
legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450.



          When considering a factual sufficiency challenge to a jury's verdict, courts of
appeals must consider and weigh all of the evidence, not just that evidence which supports
the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998). A
court of appeals can set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust. Id. at 407; Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986). 
          In a case involving adverse possession, the elements that must be proven are: 
1) actual possession of the disputed property, 2) under a claim of right, and 3) that is
adverse or hostile to the claim of the owner and that it was consistently and continuously
so for the duration of the statutory period. Taub v. Houston Pipeline Co., 75 S.W.3d 606,
625 (Tex. App.—Texarkana 2002, pet. denied); Sarandos v. Blanton, 25 S.W.3d 811, 815
(Tex. App.—Waco 2000, pet. denied). The test of hostility is whether acts performed by
the claimant on the land, and the use made of the land, was of such a nature and
character as to reasonably notify the true owner of the land that a hostile claim was being
asserted to the property. Taub, 75 S.W.3d at 626; Templeton v. Dreiss, 961 S.W.2d 645,
670 (Tex. App.—San Antonio 1998, pet. denied).
          The controlling statute reads as follows:
(1) "Adverse possession" means an actual and visible appropriation
of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person.
Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon 2002). Possession must not only
be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of
such a character as to indicate unmistakably an assertion of a claim of exclusive ownership
in the occupant. Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990). One essential
element of adverse possession under the ten-year limitation statute is that the claimant's
possession, or those in privity with the claimant, must be an actual and visible
appropriation of the land for ten or more consecutive years. Tex. Civ. Prac. & Rem. Code
Ann. § 16.026 (Vernon 2002);


 Rhodes, 802 S.W.2d at 645; Commander v. Winkler, 67
S.W.3d 265, 269 (Tex. App.—Tyler 2001, pet. denied).
          Cherokee, through multiple points of error, argues that there is no evidence
Freeman had exclusive use—that he failed to repudiate the rights of Cherokee, or that
Freeman's use was continuous over a ten-year period. In overlapping points of error,
Cherokee states there is no or insufficient evidence that possession was actual; visible;
continuous; notorious; distinct; hostile; and of such a character as to indicate unmistakably
an assertion of a claim of exclusive ownership.
          Cherokee contends there is no or insufficient evidence to show Freeman's
possession was hostile. Cherokee takes the position that Freeman's (actually his father,
W.R.'s) possession was permissive and that there was (1) no proof adequate to show that
Cherokee was placed on notice of the change from permissive to hostile, and (2) ten years
could not have passed during the hostile use period under the statute because Albert had
the right to use the property (for limited purposes) until W. R. died—which was less than
ten years ago.
          The evidence shows that, during the relevant time frame, W. R. had the right to
access to the lake for fishing purposes and for nothing more. The question thus before the
jury was whether, in light of his admitted limited right to access, Freeman had acted in a
manner that otherwise adversely possessed the property for all purposes. The limited right
does not mean adverse possession could not be proven, but does mean Freeman needed
to show possession beyond that allowed.
          Freeman testified that his father dug a canal across the property and created an
earthen pier in 1957; that his family had maintained Park A Lot on a regular basis, kept it
mowed, and cut trees from the time the lake was created; that he had paid taxes on
property shown to adjoin the lake; that he had not allowed Cherokee onto the property; and
that he had installed a water meter in 1994. He also testified Cherokee had never claimed
Park A Lot, even during the other lawsuits. Tracy Freeman, W. R. Freeman's grandson
and Albert Freeman's nephew, also testified the family had used the property by clearing
it and having picnics and family outings there. He further testified that he had moved a
mobile home onto the property and lived there from 1982 until 1990, and that he had
installed a septic tank and drilled a water well on the property—ultimately leaving them
there. The lake patrol was aware he was living there and had admitted at one point that
the property was Freeman's, not Cherokee's. Jason Jones, W. R. Freeman's grandson
and Albert Freeman's nephew, testified he had moved a mobile home onto the lot in July
1994 and lived there until August 2000. He mowed weekly during the summers, and
Cherokee was actually aware of his use. 
          Additionally, Freeman introduced a "Garden Plot Lease" (dated 1990) that Cherokee
had entered into with an adjoining landowner describing the location of the lease as "west
of the Freeman's property in fee," a location that the testimony reflects is the property at
bar.
          A lake patrolman testified he had worked for Cherokee for seven years before
October 2002 and had never interfered with the Freeman family's use of Park A Lot. Jerry
Northcutt, the assistant lake manager for Cherokee, testified the Freeman family had used
the property as discussed above, identified the "Garden Plot Lease" as having been
prepared by Cherokee, and agreed that the family's use of Park A Lot was inconsistent
with and contrary to any rights that Cherokee might have.
          Freeman quite accurately points out Cherokee never took physical possession of
this piece of property until Cherokee brought the present suit. 
          There is evidence to support the verdict. Under the legal and factual sufficiency
standards set out above, the evidence is legally and factually sufficient to support the
verdict. The trial court, therefore, did not err by overruling Cherokee's objections to the
charge because there was some evidence to raise the issues. 
III. Repudiation
          Cherokee further contends Freeman's original entry onto the property was
permissive and Freeman was required to repudiate Cherokee's title to the property before
an adverse possession claim could commence. The argument is that Freeman never
repudiated Cherokee's title to the land.
          In the 1948 conveyance, W. R. and Dessie Freeman retained the right to fish on the
lake. This reservation did not specify which lot Freeman could use to access the lake. It
is this reservation Cherokee claims gave Freeman permissive use until the death of W. R.
Freeman in 1994. 
          For the same reasons discussed above, we disagree with this argument. We have
held that it cannot be determined as a matter of law that the lot in question (Park A Lot) is
a part of the 48-1/2 acre tract in which the fishing permission was reserved. It has not
been established that this is a tract for which permission was given for fishing on the lake. 
Without that determination, it was not necessary for Freeman to repudiate Cherokee's title. 
We do note that a jury question was submitted on this issue and answered in Freeman's
favor.
IV. The Adequacy of the Description in the Judgment
          Finally, Cherokee contends the trial court's judgment is inadequate—as well as
void—because it does not adequately describe the tract of land involved, citing Arnold v.
Crockett Indep. Sch. Dist., 404 S.W.2d 27, 28 (Tex. 1966) (holding that "a judgment for
foreclosure of a tax lien upon real estate which, though aided by the judgment roll, fails to
describe a definite tract of land is void"). 
          The trial court's judgment describes the property as being shown by the plat
identifying the location of Park A Lot, which was also attached to, and made part of, the
trial court's judgment. Cherokee argues that this is insufficient: that a written metes and
bounds description of the property is necessary to adequately identify the property for
purposes of the judgment. 
          Counsel directs us to no authority directly addressing this point. He correctly states
that the cases require the judgment to provide a description of the land that "will enable a
person familiar with it to identify it from the description," citing Pomeroy v. Pearce, 2
S.W.2d 431, 432 (Tex. Comm'n App. 1928, holding approved). 
          The party claiming title by virtue of adverse possession has the burden of proving
a description of the property adversely possessed. Coleman v. Waddell, 151 Tex. 337,
249 S.W.2d 912, 913 (1952); Julien v. Baker, 758 S.W.2d 873, 877 (Tex. App.—Houston
[14th Dist.] 1988, writ denied). In this case, Cherokee does not complain that the evidence
offered at trial was insufficient to prove a description of the property, but only that the
judgment does not contain an adequate description, which Cherokee equates to a written
metes and bounds description.
          The claimant is required to identify the land to establish its location and to show the
extent of its interest in the land claimed. Perkins v. McGehee, 133 S.W.3d 287, 291 (Tex.
App.—Fort Worth 2004, no pet.); Julien, 758 S.W.2d at 877. In other words, the adverse
claimant must merely prove the location of the disputed property on the ground. 
Thompson v. Tex. Commerce Bank Nat'l Ass'n, 586 S.W.2d 138, 141 (Tex. Civ.
App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The general test for determining the
sufficiency of a description of the land is whether the tract can be identified with reasonable
certainty. Perkins, 133 S.W.3d at 291; Julien, 758 S.W.2d at 877.
          At trial, both parties introduced into evidence copies of various deeds for properties
adjoining the property at issue, which contain metes and bounds descriptions of the
adjoining properties. Cherokee itself offered into evidence a map depicting the entire area,
including the property at issue, which shows the roadways and the water line, as well as
a complete plat of the development. While the trial court's judgment fails to provide a
written metes and bounds description of the property in dispute, the judgment does identify
the property specifically as set out in the map—and we further recognize that this litigation
was in large part caused by disagreement about the actual location of the property on the
ground and whether the written description of the location accurately described that
property.
          The map and plat attached to the judgment, in combination with the court's specific
reference to that map, is sufficient to identify the disputed property with reasonable
certainty so that it may be located on the ground. See Perkins, 133 S.W.3d at 291.
 

          We affirm the trial court's judgment.
 
                                                                           Jack Carter
                                                                           Justice
 
Date Submitted:      August 25, 2004
Date Decided:         September 23, 2004