In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00168-CV
______________________________


CHEROKEE WATER COMPANY, Appellant
Â 
V.
Â 
ALBERT OLEN FREEMAN, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. 2002-347


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Â Â Â Â Â Â Â Â Â Â In 1948, W.Â R. and Dessie Freeman (Albert Freeman's parents) conveyed to
Cherokee Water Company 48-1/2 acres. Dessie Freeman died in 1987, and W.Â R.
Freeman died in 1994. Since that time, the Freeman family and Cherokee have had
several disputes regarding the property. See Cherokee Water Co. v. Freeman, 33 S.W.3d
349 (Tex. App.âTexarkana 2000, no pet.); Freeman v. Cherokee Water Co., 11 S.W.3d
480 (Tex. App.âTexarkana 2000, no pet.).
Â Â Â Â Â Â Â Â Â Â In this action, Cherokee sued Albert Freeman, demanding possession of a small
piece of property adjacent to Lake Cherokee. Freeman claimed that the property was his
by adverse possession because he and his forebears had used it for a number of purposes
for decades. The jury found that he had adversely possessed the land identified as "Park
A Lot" for over ten years and that, because of his or his privies' actions, Cherokee was
presumed to have notice of the adverse possession.
Â Â Â Â Â Â Â Â Â Â Cherokee raises four basic contentions of error. First, it contends the judgment is
improper because this lawsuit was barred by res judicata. Second, it contends the
evidence is legally and factually insufficient to support the verdict. Third, Cherokee argues
that the description of the property in the judgment is insufficient, thus the judgment is void. 
Fourth, Cherokee argues Freeman did not repudiate Cherokee's ownership of the tract. 
We affirm the judgment of the trial court.
I. Res Judicata
Â Â Â Â Â Â Â Â Â Â Cherokee's res judicata argument is that the ownership of this particular piece of
land has been previously litigated (or should have been) and that the trial court erred by
failing to render a judgment notwithstanding the verdict (JNOV) in its favor on that issue. 
Â Â Â Â Â Â Â Â Â Â Res judicata, also known as claim preclusion, prevents the relitigation of a
finally-adjudicated claim and related matters that should have been litigated in a prior suit. 
Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992).


 Texas follows the
transactional approach to res judicata. Id. at 630. This approach mandates that a
defendant bring as a counterclaim any claim arising out of the transaction or occurrence
that is the subject matter of the opposing party's suit. State & County Mut. Fire Ins. Co. v.
Miller, 52 S.W.3d 693, 696 (Tex. 2001); Barr, 837 S.W.2d at 630. It requires proof of three
elements: (1) a prior final judgment on the merits by a court of competent jurisdiction,
(2)Â identity of parties or those in privity with them, and (3) a second action based on the
same claims as were raised or could have been raised in the first action. Amstadt v.
United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996).
Â Â Â Â Â Â Â Â Â Â A. Standard of Review
Â Â Â Â Â Â Â Â Â Â Our review on this issue is based on the trial court's overruling of Cherokee's motion
for JNOV. We review a denial of a motion for JNOV under a legal sufficiency standard. 
Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986).
Â Â Â Â Â Â Â Â Â Â A trial court may disregard a jury's verdict and render a JNOV if there is no evidence
to support the jury's findings or if a directed verdict would have been proper. Brown v.
Bank of Galveston, 963 S.W.2d 511, 513 (Tex. 1998). A motion for JNOV should be
granted when (1) the evidence is conclusive, and one party is entitled to recover as a
matter of law; or (2) a legal principle precludes recovery. Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 227â28 (Tex. 1990); Anthony Equip. Corp. v. Irwin Steel Erectors, Inc., 115
S.W.3d 191, 205 (Tex. App.âDallas 2003, pet. dism'd); Goose Creek Consol. Indep. Sch.
Dist. v. Jarrar's Plumbing, Inc., 74 S.W.3d 486, 493 (Tex. App.âTexarkana 2002, pet.
denied).
Â Â Â Â Â Â Â Â Â Â We view the evidence in the light most favorable to the trial court's findings,
considering only the facts and inferences that support them. Culpepper, 802 S.W.2d at
227. If more than a scintilla of evidence exists supporting the trial court's findings, the
motion for JNOV was properly denied. Id. at 228. 
Â Â Â Â Â Â Â Â Â Â B. Does the Deed for 48-1/2 Acres Include Park A Lot as a Matter of Law
Â Â Â Â Â Â Â Â Â Â Cherokee argues that the legal principle of res judicata precludes recovery by
Freeman because, on May 20, 2002, a judgment was granted which expressly ordered that
Cherokee owned title to all the land conveyed pursuant to the W.Â R. and Dessie Freeman
general warranty deed dated May 24, 1948. That deed covered a 48-1/2 acre tract
Cherokee claims includes the "Park A Lot" tract that is at issue in this lawsuit. Cherokee
argues that, because the ownership of the specific land was decided in the prior lawsuit
between the same parties, and because the theory of adverse possession could (and
should) have been raised then, res judicata precludes this lawsuit.
Â Â Â Â Â Â Â Â Â Â The factual question as to whether the tract involved here, Park A Lot, was included
in the 48-1/2 acre tract was not presented to the jury in this case. In order for Cherokee
to prevail on its JNOV contention, we must find the trial court erred because Cherokee not
only provided evidence in support of its res judicata claim, but conclusively proved the
claim.
Â Â Â Â Â Â Â Â Â Â Freeman responds by pointing out: (1) that a fact issue exists regarding conflicting
testimony as to whether Park A Lot is actually inside those 48-1/2 acres (with no findings
requested or made on that matter); (2) that Park A Lot is not referenced by the prior
judgment; and (3) that Freeman's attorney in that lawsuit had told Freeman he had the right
to use that area after the judgment in the prior suit.


 
Â Â Â Â Â Â Â Â Â Â On cross-examination, Cherokee's surveyor admitted that references to the
monuments and natural boundaries in deeds on which he relied were now out in the lake
and that the "Cherokee Bayou" boundary was completely submerged. He testified there
were no natural boundaries to refer to because they had been destroyed by the lake's
creation.


 He testified they had found enough artificial monuments to determine the
boundaries, but then was asked specifically about several locations and admitted he had
not found monuments in those locations. He also testified that, when he had originally
done the research used to prepare the plat of the 48-1/2 acres (apparently several years
earlier), he had located that acreage only in order to determine where a separate three-acre tract was located. The surveyor ultimately stated he had relied on bearings and
distances to find some of the corners. 
Â Â Â Â Â Â Â Â Â Â Freeman testified personally he did not believe the property was inside the bounds
of the 48-1/2 acres. 
Â Â Â Â Â Â Â Â Â Â The evidence is not conclusive. The cross-examination of the surveyor cast doubt
on the survey based on the weaknesses of prior surveys and the changes in the nature of
the land over a period of decades as a result of the creation of Cherokee Lake. Thus, 
there is some question concerning the actual location of the properties involvedânot on
the groundâbut as shown by the survey. Where the evidence conflicts, we cannot
conclude the trial court erred by refusing to render a JNOV in favor of Cherokee. The trial
court also did not err by overruling Cherokee's objection to the adverse possession jury
instruction based on this contention.
Â Â Â Â Â Â Â Â Â Â The prior lawsuit orders legal title vested in Cherokee to all the land conveyed
pursuant to the 1948 deed from W.Â F. and Dessie Freeman, including but not limited to
Lots SR-51, SR-52, and SR-53. The prior judgment does not specifically determine that
Park A Lot is included in the 48-1/2 acres conveyed to Cherokee by the Freemans. 
Therefore, that issue was not actually litigated in the prior case. 
Â Â Â Â Â Â Â Â Â Â C. Does the Prior Litigation Arise from the Same Subject Matter as this Case
Â Â Â Â Â Â Â Â Â Â Res judicata precludes relitigation of claims that have been finally adjudicated or
that arise out of the same subject matter and that could have been litigated in the prior
action. Amstadt, 919 S.W.2d at 652 (citing Barr, 837 S.W.2d at 628).
Â Â Â Â Â Â Â Â Â Â As recognized by this Court, where there is a legal relationship (such as under a
lease, a contract, or a marriage), all claims arising from that relationship will arise from the
same subject matter and be subject to res judicata. Musgrave v. Owen, 67 S.W.3d 513,
520 (Tex. App.âTexarkana 2002, no pet.) (citing Weiman v. Addicks-Fairbanks Road
Sand Co., 846 S.W.2d 414, 419 (Tex. App.âHouston [14th Dist.] 1992, writ denied) (core
facts common to all claims regarding continued operation of landfill after lease expired;
combining claims would be consistent with achieving comprehensive conclusion to
business relationship); see also Twyman v. Twyman, 855 S.W.2d 619, 625 (Tex. 1993)
(resolving both tort and divorce actions in same proceeding avoids two trials based at least
in part on same facts; settles in one suit "all matters existing between the parties"); 
Robinson v. Garcia, 5 S.W.3d 348, 350â51 (Tex. App.âCorpus Christi 1999, pet. denied)
(both claims should have been tried together as they arose from representation in same
case, although distinct injuries and improper conduct were alleged); but see In re J.G.W.,
54 S.W.3d 826, 833 (Tex. App.âTexarkana 2001, no pet.) (tort claims for personal injury
that could have been brought in divorce-custody suit, but were not essentially connected
to that action and would only be incidental to the main objective of the court, to determine
the best interests of children, not barred by res judicata)).
Â Â Â Â Â Â Â Â Â Â The decisive issue is whether this litigation involves the same subject matter as the
litigation between these parties that resulted in the previous judgment. If it was, this action
is barred; otherwise, it is not. "A determination of what constitutes the subject matter of a
suit necessarily requires an examination of the factual basis of the claim or claims in the
prior litigation." Barr, 837 S.W.2d at 630. 
Â Â Â Â Â Â Â Â Â Â The record of the argument of counsel presented to the trial court on the motion for
summary judgment in cause number 96-138 is before us in this matter. After carefully
reviewing it, we find the prior litigation concerned Lots SR-51, SR-52, and SR-53 and did
not address Park A Lot, which is the dispute in this case. Specifically, counsel for
Cherokee stated the following at the motion for summary judgment hearing in the prior
case: 
Cherokee Water Company and the Nelsons would assert that they are
entitled to judgment as a matter of law on their trespass to try title claims for
SR-51 and SR-52. Cherokee Water Company would assert that it is entitled
to judgment as a matter of law on its trespass to try title claim for SR-53. 
The Nelsons and Cherokee Water would also -- well, Cherokee Water would
assert that it is entitled to a declaratory judgment, that it has legal title to
SR-51, SR-52 and SR-53. The Nelsons would assert or would request a
declaratory judgment that they are entitled to peaceful and exclusive
possession of SR-51 and SR-52. 
Â Â Â Â Â Â Â Â Â Â The attorneys referred to either SR-51, SR-52, or SR-53 on at least nine additional
occasions during the motion hearing and never indicated that Park A Lot was a part of the
dispute. 
Â Â Â Â Â Â Â Â Â Â While Park A Lot is an adjoining tract to SR-53, Park A Lot is designated on the plat
as a separate parcel of real estate. It is clear that the rights of the parties to Park A Lot
were not adjudicated in the prior action. However, that does not end our inquiry. We must
determine if the subject matter of the prior action was the same as that in this case. Both
cases do involve the alleged adverse possession by Freeman of lots that Cherokee claims
to own. It is also true that the judgment in the prior case confirmed Cherokee's ownership
of the 48-1/2 acres conveyed by W.Â R. and Dessie Freeman in 1948. However, there was
no jury finding in this case that the 48-1/2 acres included Park A Lot, and we have held that
the evidence does not establish as a matter of law that Park A Lot is a part of the 48-1/2
acres. Consequently, the fact that the prior judgment confirms Cherokee's ownership of the
48-1/2 acres does not adjudicate the ownership of Park A Lot. 
Â Â Â Â Â Â Â Â Â Â Real estate is considered to be unique. Home Sav. of Am., F.A. v. Van Cleave Dev.
Co., 737 S.W.2d 58, 59 (Tex. App.âSan Antonio 1987, no writ). The fact that a party
makes a claim of adverse possession to one lot does not require the party to assert an
adverse possession claim to the adjoining lot or be forever barred. Essentially, Cherokee
is arguing that, even though the previous suit sought to establish its ownership of Lots
SR-51, SR-52, and SR-53, Freeman was required to pursue his adverse possession claim
concerning Park A Lot, a separate lot. We disagree. 
Â Â Â Â Â Â Â Â Â Â We find that Park A Lot is a separate and distinct parcel of real estate from Lots
SR-51, SR-52, and SR-53 and as such it does not involve the same subject matter as the
previous litigation. Therefore, res judicata does not preclude Freeman from asserting his
adverse possession claim to Park A Lot. 
Â Â Â Â Â Â Â Â Â Â D. Is Freeman Estopped from Presenting this Claim
Â Â Â Â Â Â Â Â Â Â In a connected argument, Cherokee also contends Freeman is estopped as a
matter of law from claiming the property by adverse possession because the deed covers
the property, and since his predecessor was the grantor of the property under the deed,
he is estopped by the deed to raise this claim in the absence of an affirmative repudiation
of the title. See McLaren v. Beard, 811 S.W.2d 564, 568 (Tex. 1991). The difficulty in
Cherokee's position lies in the same matter discussed above: the lack of any conclusive
evidence or jury finding that the property is contained within the bounds of the land
described by the 1948 deed. In the absence of those factors, a vital underpinning for the
concept is missing and the estoppel argument fails.



II. Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â Cherokee questions whether the evidence is legally and factually sufficient to
support the verdict.
Â Â Â Â Â Â Â Â Â Â In determining a no-evidence issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the
contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of evidence is
legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450.



Â Â Â Â Â Â Â Â Â Â When considering a factual sufficiency challenge to a jury's verdict, courts of
appeals must consider and weigh all of the evidence, not just that evidence which supports
the verdict. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406â07 (Tex. 1998). A
court of appeals can set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust. Id. at 407; Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986). 
Â Â Â Â Â Â Â Â Â Â In a case involving adverse possession, the elements that must be proven are: 
1)Â actual possession of the disputed property, 2) under a claim of right, and 3) that is
adverse or hostile to the claim of the owner and that it was consistently and continuously
so for the duration of the statutory period. Taub v. Houston Pipeline Co., 75 S.W.3d 606,
625 (Tex. App.âTexarkana 2002, pet. denied); Sarandos v. Blanton, 25 S.W.3d 811, 815
(Tex. App.âWaco 2000, pet. denied). The test of hostility is whether acts performed by
the claimant on the land, and the use made of the land, was of such a nature and
character as to reasonably notify the true owner of the land that a hostile claim was being
asserted to the property. Taub, 75 S.W.3d at 626; Templeton v. Dreiss, 961 S.W.2d 645,
670 (Tex. App.âSanÂ Antonio 1998, pet. denied).
Â Â Â Â Â Â Â Â Â Â The controlling statute reads as follows:
(1) "Adverse possession" means an actual and visible appropriation
of real property, commenced and continued under a claim of right that is
inconsistent with and is hostile to the claim of another person.
Tex. Civ. Prac. & Rem. Code Ann. Â§ 16.021(1) (Vernon 2002). Possession must not only
be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of
such a character as to indicate unmistakably an assertion of a claim of exclusive ownership
in the occupant. Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990). One essential
element of adverse possession under the ten-year limitation statute is that the claimant's
possession, or those in privity with the claimant, must be an actual and visible
appropriation of the land for ten or more consecutive years. Tex. Civ. Prac. & Rem. Code
Ann. Â§ 16.026 (Vernon 2002);


 Rhodes, 802 S.W.2d at 645; Commander v. Winkler, 67
S.W.3d 265, 269 (Tex. App.âTyler 2001, pet. denied).
Â Â Â Â Â Â Â Â Â Â Cherokee, through multiple points of error, argues that there is no evidence
Freeman had exclusive useâthat he failed to repudiate the rights of Cherokee, or that
Freeman's use was continuous over a ten-year period. In overlapping points of error,
Cherokee states there is no or insufficient evidence that possession was actual; visible;
continuous; notorious; distinct; hostile; and of such a character as to indicate unmistakably
an assertion of a claim of exclusive ownership.
Â Â Â Â Â Â Â Â Â Â Cherokee contends there is no or insufficient evidence to show Freeman's
possession was hostile. Cherokee takes the position that Freeman's (actually his father,
W.R.'s) possession was permissive and that there was (1) no proof adequate to show that
Cherokee was placed on notice of the change from permissive to hostile, and (2) ten years
could not have passed during the hostile use period under the statute because Albert had
the right to use the property (for limited purposes) until W.Â R. diedâwhich was less than
ten years ago.
Â Â Â Â Â Â Â Â Â Â The evidence shows that, during the relevant time frame, W.Â R. had the right to
access to the lake for fishing purposes and for nothing more. The question thus before the
jury was whether, in light of his admitted limited right to access, Freeman had acted in a
manner that otherwise adversely possessed the property for all purposes. The limited right
does not mean adverse possession could not be proven, but does mean Freeman needed
to show possession beyond that allowed.
Â Â Â Â Â Â Â Â Â Â Freeman testified that his father dug a canal across the property and created an
earthen pier in 1957; that his family had maintained Park A Lot on a regular basis, kept it
mowed, and cut trees from the time the lake was created; that he had paid taxes on
property shown to adjoin the lake; that he had not allowed Cherokee onto the property; and
that he had installed a water meter in 1994. He also testified Cherokee had never claimed
Park A Lot, even during the other lawsuits. Tracy Freeman, W.Â R. Freeman's grandson
and Albert Freeman's nephew, also testified the family had used the property by clearing
it and having picnics and family outings there. He further testified that he had moved a
mobile home onto the property and lived there from 1982 until 1990, and that he had
installed a septic tank and drilled a water well on the propertyâultimately leaving them
there. The lake patrol was aware he was living there and had admitted at one point that
the property was Freeman's, not Cherokee's. Jason Jones, W.Â R. Freeman's grandson
and Albert Freeman's nephew, testified he had moved a mobile home onto the lot in July
1994 and lived there until August 2000. He mowed weekly during the summers, and
Cherokee was actually aware of his use. 
Â Â Â Â Â Â Â Â Â Â Additionally, Freeman introduced a "Garden Plot Lease" (dated 1990) that Cherokee
had entered into with an adjoining landowner describing the location of the lease as "west
of the Freeman's property in fee," a location that the testimony reflects is the property at
bar.
Â Â Â Â Â Â Â Â Â Â A lake patrolman testified he had worked for Cherokee for seven years before
October 2002 and had never interfered with the Freeman family's use of Park A Lot. Jerry
Northcutt, the assistant lake manager for Cherokee, testified the Freeman family had used
the property as discussed above, identified the "Garden Plot Lease" as having been
prepared by Cherokee, and agreed that the family's use of Park A Lot was inconsistent
with and contrary to any rights that Cherokee might have.
Â Â Â Â Â Â Â Â Â Â Freeman quite accurately points out Cherokee never took physical possession of
this piece of property until Cherokee brought the present suit. 
Â Â Â Â Â Â Â Â Â Â There is evidence to support the verdict. Under the legal and factual sufficiency
standards set out above, the evidence is legally and factually sufficient to support the
verdict. The trial court, therefore, did not err by overruling Cherokee's objections to the
charge because there was some evidence to raise the issues.Â 
III. Repudiation
Â Â Â Â Â Â Â Â Â Â Cherokee further contends Freeman's original entry onto the property was
permissive and Freeman was required to repudiate Cherokee's title to the property before
an adverse possession claim could commence. The argument is that Freeman never
repudiated Cherokee's title to the land.
Â Â Â Â Â Â Â Â Â Â In the 1948 conveyance, W.Â R. and Dessie Freeman retained the right to fish on the
lake. This reservation did not specify which lot Freeman could use to access the lake. It
is this reservation Cherokee claims gave Freeman permissive use until the death of W.Â R.
Freeman in 1994. 
Â Â Â Â Â Â Â Â Â Â For the same reasons discussed above, we disagree with this argument. We have
held that it cannot be determined as a matter of law that the lot in question (Park A Lot) is
a part of the 48-1/2 acre tract in which the fishing permission was reserved. It has not
been established that this is a tract for which permission was given for fishing on the lake. 
Without that determination, it was not necessary for Freeman to repudiate Cherokee's title. 
We do note that a jury question was submitted on this issue and answered in Freeman's
favor.
IV. The Adequacy of the Description in the Judgment
Â Â Â Â Â Â Â Â Â Â Finally, Cherokee contends the trial court's judgment is inadequateâas well as
voidâbecause it does not adequately describe the tract of land involved, citing Arnold v.
Crockett Indep. Sch. Dist., 404 S.W.2d 27, 28 (Tex. 1966) (holding that "a judgment for
foreclosure of a tax lien upon real estate which, though aided by the judgment roll, fails to
describe a definite tract of land is void"). 
Â Â Â Â Â Â Â Â Â Â The trial court's judgment describes the property as being shown by the plat
identifying the location of Park A Lot, which was also attached to, and made part of, the
trial court's judgment. Cherokee argues that this is insufficient: that a written metes and
bounds description of the property is necessary to adequately identify the property for
purposes of the judgment. 
Â Â Â Â Â Â Â Â Â Â Counsel directs us to no authority directly addressing this point. He correctly states
that the cases require the judgment to provide a description of the land that "will enable a
person familiar with it to identify it from the description," citing Pomeroy v. Pearce, 2
S.W.2d 431, 432 (Tex. Comm'n App. 1928, holding approved). 
Â Â Â Â Â Â Â Â Â Â The party claiming title by virtue of adverse possession has the burden of proving
a description of the property adversely possessed. Coleman v. Waddell, 151 Tex. 337,
249 S.W.2d 912, 913 (1952); Julien v. Baker, 758 S.W.2d 873, 877 (Tex. App.âHouston
[14th Dist.] 1988, writ denied). In this case, Cherokee does not complain that the evidence
offered at trial was insufficient to prove a description of the property, but only that the
judgment does not contain an adequate description, which Cherokee equates to a written
metes and bounds description.
Â Â Â Â Â Â Â Â Â Â The claimant is required to identify the land to establish its location and to show the
extent of its interest in the land claimed. Perkins v. McGehee, 133 S.W.3d 287, 291 (Tex.
App.âFort Worth 2004, no pet.); Julien, 758 S.W.2d at 877. In other words, the adverse
claimant must merely prove the location of the disputed property on the ground. 
Thompson v. Tex. Commerce Bank Nat'l Ass'n, 586 S.W.2d 138, 141 (Tex. Civ.
App.âHouston [1st Dist.] 1979, writ ref'd n.r.e.). The general test for determining the
sufficiency of a description of the land is whether the tract can be identified with reasonable
certainty. Perkins, 133 S.W.3d at 291; Julien, 758 S.W.2d at 877.
Â Â Â Â Â Â Â Â Â Â At trial, both parties introduced into evidence copies of various deeds for properties
adjoining the property at issue, which contain metes and bounds descriptions of the
adjoining properties. Cherokee itself offered into evidence a map depicting the entire area,
including the property at issue, which shows the roadways and the water line, as well as
a complete plat of the development. While the trial court's judgment fails to provide a
written metes and bounds description of the property in dispute, the judgment does identify
the property specifically as set out in the mapâand we further recognize that this litigation
was in large part caused by disagreement about the actual location of the property on the
ground and whether the written description of the location accurately described that
property.
Â Â Â Â Â Â Â Â Â Â The map and plat attached to the judgment, in combination with the court's specific
reference to that map, is sufficient to identify the disputed property with reasonable
certainty so that it may be located on the ground. See Perkins, 133 S.W.3d at 291.
Â 

Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â August 25, 2004
Date Decided:Â Â Â Â Â Â Â Â Â September 23, 2004




style='mso-tab-count:1'>   Article 37.07, Section 3(a)(1)
allows for admission of any evidence the trial court Âdeems relevant to sentencing.ÂÂ  Tex. Code Crim. Proc. Ann. art.
37.07, Â§ 3(a)(1) (West Supp. 2010).Â  The
Legislature has expressly provided that relevant punishment evidence includes,
but is not limited to, both character evidence in the form of opinion testimony
as well as extraneous offense evidence.Â 
However, Article 37.07, Section 3(g) states:

On
timely request of the defendant, notice of intent to introduce evidence under
this article shall be given in the same manner required by Rule 404(b), Texas
Rules of Evidence. . . . The requirement under this subsection that the
attorney representing the state give notice applies only if the defendant makes
a timely request to the attorney representing the state for the notice.

Â 

Tex. Code Crim. Proc. Ann. art.
37.07, Â§ 3(g) (West Supp. 2010).Â  The
StateÂs obligation to comply with the notice requirement in Article 37.07 was
triggered when Brown filed his request. 

Â Â Â Â Â Â Â Â Â Â Â  The StateÂs notice warned of intent
to introduce Âeach and every extraneous offense, crime, wrong and act . . . noted
below as well as those identified in offense reports or other documents and
recordings presented in the StateÂs file.ÂÂ 
Among other specified convictions, the notice warned Brown that the
State would present prior convictions of assault causing bodily injury,
possession of marihuana, unlawful carrying of a weapon, and driving while
license suspended. Â Brown stipulated to
the admission of these convictions. 

Â Â Â Â Â Â Â Â Â Â Â  BrownÂs complaint focuses on
extraneous offense testimony of Selena Wolfe,[3]
who testified that she purchased drugs from Brown. Â Brown objected that the following testimony
was extraneous offense testimony which was not included in the StateÂs notice.

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  How
many times, approximately, total, that summer did you buy from him?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  It
was a lot.Â  I mean, I canÂt --

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  [BrownÂs
Counsel]:Â  Objection, Your Honor.Â  WeÂre getting into the offenses for which
theyÂve not given -- extraneous offenses for which theyÂve not given notice. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  THE
COURT:Â  Overruled. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  (By
Mrs. Pollard)Â  How many times is a lot to
you?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Forty
or fifty times, maybe.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  During cross-examination, defense
counsel attempted to elicit testimony from Wolfe to establish that Brown was a
drug user rather than a dealer.Â  He
established that she and Brown used drugs together, both had a bad drug habit,
and reiterated that she was buying drugs from Brown, paying $20.00 to $70.00
each time. Â He then asked Wolfe if Brown
was Âmore as a dealer or more as a user,Â to which she answered, Â[E]qual.Â Â Wolfe was then asked if Brown had gotten into
trouble with his supplier, and she explained that you get Âin the hole with the
dealer means -- when you either use more or give away more or something.Â 

Â Â Â Â Â Â Â Â Â Â Â  After cross-examination, the State
asked the following:

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  How many suppliers did Mr. Brown have? 

Â Â Â Â Â Â Â Â Â Â Â  Wolfe then named the five
suppliers.Â  

She
later stated he received three to four deliveries every week.Â  

Later
Wolfe was asked: 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  So,
on the average, how many customers did Mr. Brown have per week?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  He
had customers come in and out all day, about 30 to 40 people.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Are
these regular people youÂd see over and over?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes,
maÂam. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Of
the ones that you witnessed the buys, how much was he selling?

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  [BrownÂs
Counsel]:Â  Object again, Judge, to
extraneous offenses not previously provided in response to the requested
notices. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  [The
State]:Â  Response, Your Honor --

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  THE
COURT:Â  Overruled. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  [The
State]:Â  Mr. Starnes has waived the
objection.Â  He asked about Mr. BrownÂs
dealing --

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  THE
COURT:Â  I understand.Â  His objection is overruled.

Â 

Â Â Â Â Â Â Â Â Â Â Â  . . . .

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Anywhere
from [$]20 to $40 at a time.Â  

Â 

Citing
to these exchanges, Brown argues that Article 37.07, Section 3(g) was
violated.Â  

Â Â Â Â Â Â Â Â Â Â Â  ÂThe purpose of Article 37.07, Â§
3(g) is to avoid unfair surprise, so that the defendant will have adequate time
to prepare for the extraneous offense evidence the state will present at
trial.ÂÂ  James v. State, 47 S.W.3d 710, 713 (Tex. App.ÂTexarkana 2001, no
pet.).Â  The sufficiency of the StateÂs
notice of extraneous offense evidence depends on the circumstances of each
case.Â  Webb v. State, 36 S.W.3d 164, 178 (Tex. App.ÂHouston [14th Dist.]
2000, pet. refÂd). Â The trial court has discretion to determine what
constitutes substantial compliance with the statuteÂs notice requirement;
however, it may not use its discretion to excuse outright noncompliance. Â See
Hernandez v. State, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (addressing Tex. R. Evid.
404(b)Âs similar notice requirement).Â  

Â Â Â Â Â Â Â Â Â Â Â  Here, the StateÂs notice made no
mention of additional drug sales by Brown.Â 
Such extraneous offenses were also not identified Âin offense reports or
other documents and recordings presented in theÂ record.Â  Article 37.07, Section 3(g) specifically
states that in order for notice of Âextraneous crime[s] or bad act[s] that
[have] not resulted in a final convictionÂ to be reasonable, at a minimum, the
State must provide Âthe date on which and the county in which the alleged crime[s]
or bad act[s] occurred.ÂÂ  Tex. Code Crim.
Proc. Ann. art. 37.07, Â§ 3(g).Â 
This was not provided in the StateÂs notice.Â  Thus, it was insufficient to provide notice
to Brown of the numerous drug sales described by Wolfe.Â  See
James, 47 S.W.3d at 714.Â  

Â Â Â Â Â Â Â Â Â Â Â  At trial, the State argued that
Brown waived the objection to the extraneous offense evidence by his cross-examination
of Wolfe, which included testimony about BrownÂs drug habit and suppliers. Â This cross-examination appeared to be an
attempt to portray Brown as a drug user who only sold drugs to support his
habit, rather than for financial benefit.Â 
The law does recognize a waiver of error in admitting evidence if the
same evidence is otherwise admitted without objection (in this case elicited by
Brown). Â Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996).Â  The corollary is that no waiver occurs if the
defendant presents evidence to meet, explain, or mitigate the effect of the
inadmissible evidence.Â  See Maynard
v. State, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985) (defendant not required
to sit mute in face of harmful evidence to preserve issue for appellate
review).Â  We do not find that the
cross-examination of Wolfe concerning BrownÂs drug habit and suppliers waived
his objection to WolfeÂs testimony concerning her many drug purchases and the
numerous other drug sales she observed.Â Â 


Â Â Â Â Â Â Â Â Â Â Â  Next, we must determine whether the
admission of WolfeÂs testimony was harmful. Although the notice provision of
Article 37.07, Section 3(g) is mandatory, failure to comply does not
automatically constitute grounds for reversal. Â Ford v.
State, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002).Â  Erroneous admission of extraneous offense
evidence in violation of Article 37.07, Section 3(g) is nonconstitutional
error; therefore, we analyze it to determine whether the error affected a
substantial right of the defendant. Â Tex. R. App. P. 44.2(b); see James, 47 S.W.3d at 714; Luna v. State, 301 S.W.3d 322, 326 (Tex.
App.ÂWaco 2009, no pet.) (citing Apolinar v. State,
106 S.W.3d 407, 414 (Tex. App.ÂHouston [1st Dist.] 2003), affÂd on other grounds, 155 S.W.3d 184 (Tex. Crim. App. 2005)).Â  

Â Â Â Â Â Â Â Â Â Â Â  We evaluate the effect of the error
in admitting extraneous offense evidence without adequate notice in light of the
purpose of Article 37.07, Section 3(g), which is to prevent surprise to the
defendant.Â  Luna, 301 S.W.3d at 326; Roethel v. State,
80 S.W.3d 276, 281Â82 (Tex. App.ÂAustin 2002, no pet.) (noting purpose of Article
37.07Âs notice requirement is to enable defendant to prepare to meet extraneous
offense evidence and that harm is assessed in view of whether statuteÂs purpose
of preventing surprise was thwarted); see
McDonald v. State, 179 S.W.3d 571,
578 (Tex. Crim. App. 2005); Hernandez,
176 S.W.3d at 824 (where defendant objected only to Rule 404(b) lack of notice,
not substantive admissibility of extraneous acts, appellate court considers
only harm caused by lack of notice and effect on defendantÂs ability to mount adequate
defense).Â  ÂThis analysis requires
examining the record to determine whether the deficient notice resulted from
prosecutorial bad faith or prevented the defendant from preparing for
trial.ÂÂ  Luna, 31 S.W.3d at 326 (citing Roethel, 80 S.W.3d at 282).Â  ÂIn determining the latter,[4] appellate courts look at
whether the defendant was surprised by the substance of the testimony and
whether that affected his ability to prepare cross-examination or mitigating
evidence.ÂÂ  Id. (citing Roethel,
80 S.W.3d at 282).

Â Â Â Â Â Â Â Â Â Â Â  Brown did not claim that he was
surprised by WolfeÂs testimony during trial.Â 
With respect to this issue in his brief, Brown merely stated,

AppellantÂs
counsel clearly was surprised from such testimony.Â  From the discovery produced, he expected
testimony from Selena Wolf[e] as to only one transaction in the one case for
which she was the AppellantÂs co-defendant. Â Instead, he was faced with forty to fifty
transactions over a two to three week period and other drug deals occurring
with thirty to forty people per week.Â 
Appellant clearly had nothing with which to counter such testimony and
had no reason to anticipate the same.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Despite BrownÂs contentions, Âwe
will examine the record to determine whether the deficient notice . . . prevented
the defendant from preparing for trial.ÂÂ 
Roethel,
80 S.W.3d at 282. Brown did not
indicate surprise to the court below or request additional time to prepare for
cross-examination.Â  We attribute this to
the fact that Brown knew that Wolfe would be called to testify in the
consolidated trial.Â  In addition to being
BrownÂs co-defendant in one of the drug cases, Wolfe testified that she was
living with Brown, where drug transactions, including the sales to her, would
occur.Â  BrownÂs counsel had the
opportunity to confer with Wolfe prior to trial.Â  During this pretrial meeting, Wolfe stated
Brown had Âgotten in trouble with his supplier.ÂÂ  Thus, BrownÂs counsel was aware that Wolfe,
who lived with Brown and was an alleged co-defendant in a delivery of a
controlled substance case, knew that Brown was a drug dealer.Â  Perhaps that is why Brown did not indicate
surprise or mention to the trial court that he was unable to mount a defense to
WolfeÂs testimony relating to the numerous drug transactions.Â  

Â Â Â Â Â Â Â Â Â Â Â  Because the record does not show
that the deficient notice impaired BrownÂs ability to prepare for WolfeÂs
testimony, we conclude that the deficient notice did not affect BrownÂs
substantial rights.Â  See Roethel, 80 S.W.3d at 283. 

Â Â Â Â Â Â Â Â Â Â Â  We overrule BrownÂs second point of
error.Â  

III.Â Â Â Â Â Â  Conclusion


Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs judgment. 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  September 7, 2011

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September 9, 2011

Â 

Do
Not Publish

Â 











[1]In
a single brief, Brown appeals this conviction, as well as the following
convictions:Â  (1) delivery of cocaine in
an amount of less than one gram within a drug free zone in cause number
06-11-00062-CR; (2) delivery of cocaine in an amount of more than one gram but
less than four grams within a drug free zone in cause number 06-11-00063-CR;
and (3) delivery of cocaine in an amount of more than one gram but less than
four grams within a drug free zone in cause number 06-11-00064-CR.Â  All cases were consolidated for trial.Â  





[2]The
complaint stems from Officer Jeff SpringerÂs testimony that Buttons and Bows is
a daycare center which Âsits just east and across the streetÂ from a
playground. 





[3]Wolfe
was identified as a witness for the State in one of the four cases which were
all consolidated for trial.Â  





[4]Statements
in BrownÂs brief that Âthe State obviously knew about [Wolfe],Â Âobviously the
State had talked with her,Â Âfrom the questioning, it is clear that the State
possessed the information concerning these forty to fifty transactions prior to
the trial,Â and the allegation that Â[t]he State consciously chose not to list
the [extraneous offenses] in the notice despite possessing the information,Â
even if interpreted as prosecutorial misconduct, were not represented to the
trial court below.Â  In any event, Âwholly
conclusory [statements], offering no explanation of,
much less argument supporting, [a defendantÂs] allegation of prosecutorial
misconductÂ is inadequate.Â  Garcia v. State, 887 S.W.2d 862, 876
(Tex. Crim. App. 1994), abrogated on
other grounds, Rankin v. State,
46 S.W.3d 899, 892 (Tex. Crim. App. 2001).Â 
Additionally, there is no evidence in the record as to when the State
acquired the information related to the extraneous offenses highlighted by
Wolfe.